UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMMY GROSSENBACHER,

       Plaintiff,

v.                                          Case No. 1:04-CV-336
                                          Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

                                       /

**REPORT AND RECOMMENDATION**

       Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

       Plaintiff was born on August 15, 1967, graduated from high school and attended three years of college courses (AR 81).[1] She stated that she became disabled on April 28, 2001 (AR 55). She had previous employment as a medical insurance biller, medical records technician, office manager, accounts receivable clerk and collection specialist (AR 76). Plaintiff's claim arose from injuries sustained in a motor vehicle accident on April 28, 2001, in which she sustained a closed head injury (AR 19). Plaintiff identified her disabling conditions as head trauma, muscle tears in chest, back and neck, whiplash, concussion, memory loss, pain in neck causing nausea, continuous pain and numbness in back that limits her ability to sit, stand or walk, inability to sit at a desk for any duration of time, dizziness, depression and anxiety (AR 75). After administrative denial of plaintiff's

---

[1] Citations to the administrative record will be referenced as (AR "page #").

claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on February 19, 2004 (AR 17-24). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. *Id.* (citing 20 C.F.R. §§ 404.1520(b) and 416.920(b)(2000)). Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Id.* (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)(2000)). Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled. *Abbott*, 905 F.2d at 923.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001). The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the

3

inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since April 28, 2001 (AR 23). Second, the ALJ found that she suffered from severe impairments of a cognitive disorder, not otherwise specified, a depressive disorder secondary to a motor vehicle accident, and an anxiety disorder secondary to a motor vehicle accident (AR 18). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 23). The ALJ decided at the fourth step that plaintiff had the residual functional capacity:

> to perform the exertional and nonexertional requirements of sedentary work, subject to moderate restrictions of social and occupational functioning; simple, unskilled, repetitive work; and work that is performed independently and does not involve team coordination.

(AR 23). The ALJ further concluded that plaintiff was unable to perform her past relevant work (AR 21).

At the fifth step, the ALJ determined that plaintiff was capable of performing a significant range of work in the national economy (AR 23-24). Specifically, the ALJ found that an individual with plaintiff's limitations could perform 2,860 jobs in the local economy (Grand Rapids, MI area), which consisted of the following: assembler (1,200 jobs); hand packer (910 jobs); and

4

sorter (750 jobs) (AR 24, 407). The ALJ also found plaintiff's allegations regarding her limitations were not fully credible (AR 23). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 23-24).

## III. ANALYSIS

Plaintiff raises two issues on appeal.

**A.   The ALJ violated the regulations and case law by rejecting limitations that were corroborated by the medical evidence.**

**B.   The ALJ did not have good reasons for rejecting plaintiff's stated need to lie down.**

Plaintiff contends that the ALJ improperly rejected four claims: hand limitations, "pain on looking down," "tearfulness," and her need to lie down during the day. Plaintiff's Brief at 12-19.

### 1.   Tearfulness

First, plaintiff contends that she is entitled to a disability due to her "tearfulness," noting that doctors found her tearful on various occasions. Plaintiff's Brief at 14. While tearfulness is often cited as a symptom, plaintiff has failed to articulate how a doctor's observation of tearfulness constitutes a disabling impairment or verifies the existence of some other disabling impairment. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, plaintiff's claim with respect to tearfulness is deemed waived.

5

### 2. Limitations due to pain (carpal tunnel syndrome, inability to look down, and need to lie down)

The gist of plaintiff's claim is that the ALJ did not properly evaluate her claim of disabling pain from carpal tunnel syndrome (CTS), neck injuries and back injuries. An ALJ's evaluation of a claimant's pain is admittedly inexact. *Jones v. Secretary of Health and Human Servs.*, 945 F.2d 1365 (6th Cir. 1991). As the Sixth Circuit noted in *Jones*:

> The measure of an individual's pain cannot be easily reduced to a matter of neat calculations. There are no x-rays that can be taken that would objectively show the precise level of agony that an individual is experiencing. Hence, in evaluating the intensity and persistence of pain, both physicians and laymen alike, must often engage in guesswork.

*Id.* at 1369. Despite the inexact nature of measuring a claimant's pain, the ALJ must nevertheless evaluate the alleged pain and determine whether the claimant suffers from disabling pain.

While it is well-settled that pain may be so severe that it constitutes a disability, a disability cannot be established by subjective complaints of pain alone. "An individual's statement as to pain or other symptoms shall not *alone* be conclusive evidence of disability." *Cohen v. Secretary of Department of Health and Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992), quoting 42 U.S.C. § 423(d)(5)(A) (emphasis added). Rather, objective medical evidence that confirms the existence of pain is required. *Shavers v. Secretary of Health and Human Services*, 839 F.2d 232, 234-235 (6th Cir.1987). In *Duncan v. Secretary of Health and Human Servs.*, 801 F.2d 847 (6th Cir. 1986), the Sixth Circuit fashioned a two-prong test for evaluating an alleged disability based upon pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1037-1039 (6th Cir. 1994) (the *Duncan* analysis is a "succinct form" of the Social Security Administration's guidelines for use in analyzing a claimant's subjective complaints of pain as set forth in 20 C.F.R. § 404.1529).

To meet the first prong of the *Duncan* test, the claimant must present objective evidence of an underlying medical condition. *Duncan*, 801 F.2d 847 at 853.  In order for a claimant to meet the second prong of the *Duncan* test  "(1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain." *Id.*

### First prong of the *Duncan* test

The ALJ found that plaintiff suffered from severe impairments of a cognitive disorder, not otherwise specified, a depressive disorder secondary to a motor vehicle accident, and an anxiety disorder secondary to a motor vehicle accident (AR 18).  The ALJ did not find that plaintiff suffered from any severe impairments related to her hands, neck or back.  Nevertheless, the record includes objective medical evidence of CTS and an old neck injury.  An EMG from March 2003 indicated evidence of "mild to moderate bilateral carpal tunnel syndrome" (AR 228).  Plaintiff also has a medical record of a fractured vertebra at T4, which she suffered in November 1993 (AR 143, 160, 185, 253).  An MRI in June 2002 showed a history of disc herniation, with "an old anterior compression fracture of the T4 vertebral body and mild posterior bulging of the C5-6 disc" (AR 160, 185).  *See Jones v. Commissioner*, 336 F.3d 469, 475 (6th Cir. 2003) (first prong of *Duncan* test met when doctors diagnosed various disorders and medicated the claimant for the disorders).  Accordingly, plaintiff has satisfied the first prong of the *Duncan* test.

### Second prong of the *Duncan* test

With respect to the first part of the second prong of the *Duncan* test, plaintiff must demonstrate that the objective medical evidence confirms the severity of his pain.  A claimant's self-

7

reports of pain do not constitute objective medical evidence. *See McGuire v. Commissioner*, No. 98-1502, 1999 WL 196508 at * 7 (6th Cir. March 25, 1999 ), *citing Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990). Reliable indicators of intense pain include muscle atrophy, reduced range of motion, muscle spasms, and motor disruption. *Jones*, 945 F.2d at 1370. Plaintiff has failed to demonstrate the existence of reliable indicators of intense pain. Plaintiff has indicated only one instance of a back spasm (February 2002) (AR 137). Plaintiff's Brief at 4. In addition, the court notes that plaintiff had a reduced range in motion in her cervical spine in June 2002 (AR 140). However, the record does not contain consistent reports of back spasm and reduced range of motion, and no reports of muscle atrophy or motor disruption.

The ALJ may also consider plaintiff's household and social activities in evaluating complaints of pain. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). Here, the ALJ noted that plaintiff's activities included: scuba diving once, attending a marketing class in Chicago, working three hours a month as the school's PTO treasurer (raise funds and make bank deposits), acting as a volunteer at the Tall Ships convention and attending monthly meetings of the Jaycees Junior Chamber of Commerce (AR 21). In February 2002, plaintiff reported to her physicians that she can iron, clean floors, carry her youngest child and that she was working out a little bit (AR 21, 169). Plaintiff reported that it was difficult to perform housework at the time, but that this condition seemed to be improving (AR 169).

In March 2003, plaintiff reported that she went shopping every two weeks for food and clothing, and that she could take short bicycle rides (15 to 20 minutes) (AR 93-94, 102). That same month, plaintiff reported to a DDS psychologist that she attended a Jimmy Buffet Parrothead fan convention four times a year (AR 21, 192). Plaintiff also stated that her daily activities include:

8

getting her children off to school in the morning, talking on the telephone with friends, doing some light housekeeping chores (including cooking and sorting laundry), taking an afternoon nap, working with her recipes, visiting family or friends, spending the evening with her family, helping her children with their homework and watching television (AR 192). The daily activities questionnaires indicate that plaintiff drives four times a week, cooks, shops, reads, watches children, grooms herself, bathes and participates in clubs on a monthly basis (AR 89, 94-95). At the hearing in January 2004, plaintiff testified that she helped her children get ready for school, straightened the kitchen, talked on the telephone, read books to her child, gave her son a bath, loaded the washing machine, drove a car, shopped, went to monthly Jaycee meetings and served as treasurer of a school's PTO (AR 382, 387-88, 390-91, 402-03).

Plaintiff's activities are not indicative of a person experiencing severe, disabling pain. *See Pena v. Commissioner*, No. 98-1833, 1999 WL 775832 (6th Cir. Sept. 24, 1999) (claim of disabling pain belied by claimant's performance of daily activities such as preparing meals, grocery shopping, mowing lawn, taking out garbage and watching grandchildren); *Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d 709, 713 (6th Cir. 1988) (claimant found not disabled by severe pain when he was able to drive, do housework, visit relatives regularly, babysit occasionally, read, watch television, feed chickens and garden occasionally); *Gist v. Secretary of Health and Human Servs.*, 736 F.2d 352, 358 (6th Cir. 1984)(capacity to perform daily activities on a regular basis will militate against a finding of disability).

The ALJ also found that plaintiff's allegations of symptoms, pain and functional limitations were not fully credible (AR 22-23). An ALJ's credibility determinations are accorded deference and not lightly discarded. *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d

1230, 1234 (6th Cir. 1993); *Hardaway v. Secretary of Health and Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987). An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). *See also Tyra v. Secretary of Health and Human Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990) (ALJ may dismiss claimant's allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict). Here, the ALJ noted inconsistencies between plaintiff's testimony at the hearing and her reports to her physicians: involving her inability to iron, perform repetitive tasks and lift more than ten pounds (AR 21-22). In September 2001, plaintiff's physician, Dr. Krohn, observed contradictions in plaintiff's behavior: while plaintiff could not do her housework, she volunteered to work on a committee at the Tall Ships event (AR 21, 182). Discrepancies exist between plaintiff's testimony and the other evidence in the record. Accordingly, the ALJ had some basis to discount plaintiff's credibility.

Finally, plaintiff fails to meet the second part of the second prong of the *Duncan* test because she provides no objective medical evidence indicating that her condition "is of a severity which can reasonably be expected to give rise to the alleged pain." *Duncan*, 801 F.2d at 853. Plaintiff does not allege that she became disabled after suffering the T4 vertebral fracture in 1993. Indeed, her work record indicates substantial employment from 1994 through 2001 (AR 68-69).

At the hearing, plaintiff testified that she cannot operate a vacuum or load the dishwasher (AR 382). However, the record does not indicate that plaintiff's CTS was of a severity as to result in disabling pain. In July 2001, plaintiff denied weakness in the arms or paresthesias (AR 172). The record indicates that plaintiff reported a history of carpal tunnel syndrome in February and

10

March 2002, and that she had wrist braces for the condition which seemed to help (AR 19, 168-69). On March 5, 2003 plaintiff underwent an electromyogram/nerve conduction velocity study, which showed evidence of "mild to moderate bilateral carpal tunnel syndrome" (AR 228). In April 2003, plaintiff reported to her physician, Dr. Krohn, that while she had tingling in her fingers most of the day, the CTS was not as aggravating (AR 263). Plaintiff had used HCTZ to treat the CTS (AR 263). Her physician felt that losing weight "played a huge role" in the improvement of the CTS and advised her to delay consideration of surgery because weight gain can be associated with the condition (AR 263). The doctor noted that plaintiff would have a follow-up appointment in four months to address the CTS (AR 263). Although plaintiff visited Dr. Krohn's office in July, September and October 2003, there are no records of subsequent discussion or treatment of the CTS (AR 264-68).

There is no question that plaintiff was diagnosed with CTS. However, "the mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual." *McKenzie v. Commissioner of Social Security*, No. 99-3400, 2000 WL 687680 at *5 (6th Cir. May 19, 2000), *citing Foster v. Bowen*, 853 F.2d 488, 489 (6th Cir. 1988). While plaintiff was diagnosed with mild to moderate CTS in March 2003, the record does not corroborate her claim that she suffered from hand limitations related to the CTS that precluded work-related activities. Plaintiff reported improvement in the condition in April 2003 and reported no further problems.

Finally, while plaintiff states that she needs to lie down during the day, none of her doctors have prescribed this type of daily rest. Plaintiff's reports to her doctor that she sleeps during the day and that her symptoms were helped only by lying flat on her back (AR 160, 172) do not

constitute objective medical evidence. A claimant's self-reports of pain do not constitute objective medical evidence. *See McGuire v. Commissioner*, No. 98-1502, 1999 WL 196508 at * 7 (6th Cir. March 25, 1999 ), *citing Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990). Accordingly, the ALJ could properly reject plaintiff's claims of disabling pain.

The court's analysis does not suggest that plaintiff does not suffer from pain. Rather, the evidence indicates only that plaintiff's pain was not disabling under the *Duncan* standard. Even if this court might reach a different conclusion considering the evidence *de novo,* there is no basis on this limited appellate review to disturb the ALJ's decision.

## IV.  Recommendation

I respectfully recommend that the Commissioner's decision be affirmed.


Dated:      June 7, 2005                          /s/  Hugh W. Brenneman, Jr.
                                                  Hugh W. Brenneman, Jr.
                                                  United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).